**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>HENRY WATKINS, a/k/a Tutu,<br><br>Defendant. | No. CR25-18-LTS-MAR<br><br>**ORDER ON REPORT AND RECOMMENDATION** |

## *I. INTRODUCTION*

This case is before me on a Report and Recommendation (R&R) (Doc. 45) in which United States Magistrate Judge Mark A. Roberts recommends that I deny defendant Henry Watkins' motion (Doc. 27) to dismiss the indictment. Watkins has filed timely objections (Doc. 48).

## *II. BACKGROUND*[1]

On February 26, 2025, the grand jury returned a one-count indictment (Doc. 3) charging Watkins with distributing methamphetamine. An arrest warrant (Doc. 4) was issued the same day. At the time, Watkins was residing in the Philippines. Two days after the arrest warrant was issued, a United States Drug Enforcement Administration (DEA) agent contacted the Philippine Bureau of Immigration (BI) to report that Watkins was a United States fugitive and subject to an arrest warrant. Doc. 31-1 at 1. On March 5, 2025, Philippine authorities commenced deportation proceedings, alleging that

[1] Watkins makes two factual objections to the R&R related to one omission and a minor correction to the timeline of Watkins' stays while being transported to the Northern District of Iowa. *See* Doc. 48 at 3. In conducting my de novo review of the record, I have considered the facts cited in Thomas' objections. However, to the extent Thomas asserts that it was erroneous to exclude those facts from the R&R, that objection is overruled.

Watkins violated the terms of his visa because he was "a fugitive from justice" and "poses a risk to public interest." *Id.*; *see also* Doc. 31-2 at 17–39; Doc. 31-3. The BI Board of Commissioners approved the deportation order on March 21, 2025, providing that Watkins would be deported to the United States "subject to clearance from the [Philippine National Bureau of Investigation] and courts, if applicable" and that the United States Embassy would "provide and fund BI escorts" for Watkins' deportation. Doc. 31-1 at 1 (citing Bureau of Immigration, Mem. Ord. No. RADJR-2012-009 (Mar. 8, 2012) (Phil.), https://elibrary.judiciary.gov.ph/thebookshelf/showdocs/10/50175).

Watkins spent nine months detained in the Philippines. He was deported on December 15, 2025, and arrived in San Francisco, California, on December 16, 2025, where he was taken into custody by DEA agents. Doc. 26. The day Watkins arrived, he made an initial appearance in the Northern District of California. Doc. 9. The Government moved for his detention and Watkins waived his right to a detention hearing. *Id.* at 4. Watkins was remanded to the custody of the United States Marshals Service (USMS) for transport to the Northern District of Iowa. *Id.* at 5. On March 13, 2026, 87 days after his initial appearance in the Northern District of California, Watkins received an initial appearance and arraignment in the Northern District of Iowa. Doc. 12. Trial was set for April 20, 2026. Doc. 15.

Eighteen days later, on March 31, 2026, Watkins' attorney filed unresisted motions (Doc. 17, 18) to continue trial and to withdraw due to a conflict of interest. Both motions were granted and trial was continued to June 15, 2026. Docs. 19–20. On April 6, 2026, the court received a pro se letter (Doc. 23) from Watkins in which he notified the court of his "demand for a speedy trial." On May 20, 2026, Watkins filed his motion (Doc. 27) to dismiss, contending that the Government is violating his right to a speedy trial under the Speedy Trial Act, 18 U.S.C. § 3161, and the Sixth Amendment. The next day, he filed another unresisted motion (Doc. 28) to continue trial so the court could resolve the motion to dismiss. That motion was granted and trial was continued to August 17, 2026. Doc. 29.

Judge Roberts held a hearing on the motion to dismiss on June 4, 2026. Doc. 35. On June 16, 2026, Watkins filed a pro se motion (Doc. 38) to discharge his counsel. A hearing on that motion was held June 23, 2026, at which time the motion was granted and substitute counsel was appointed. Doc. 43. Because newly appointed counsel needed time to prepare (and was scheduled to be in a different trial on August 17, 2026), Watkins filed a third unresisted motion (Doc. 46) to continue trial on July 23, 2026. Doc. 46. The motion was granted and trial has been continued to October 19, 2026. Doc. 47.

## *III. STANDARD OF REVIEW*

A district judge reviews a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*,

333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## *IV. DISCUSSION*

Although the R&R analyzed Watkins' arguments concerning both the Speedy Trial Act and the Sixth Amendment, Watkins' objection addresses only the Sixth Amendment arguments.[2] Doc. 48 at 4-7. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The right "attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences." *United States v. Lewis*, 146 F.4th 621, 629 (8th Cir. 2025). Although written broadly, the clause's scope is qualified. *Doggett v. United States*, 505 U.S. 647, 651 (1992). To trigger a speedy trial analysis, "an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Lewis*, 146 F.4th at 629 (quoting *United States v. Sprouts*, 282 F.3d 1037, 1042 (8th Cir. 2002)). The court then must perform an ad hoc balancing of the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant" to decide whether a defendant's right to a speedy trial has been violated. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

---

[2] Judge Roberts calculated that the 18 days between Watkins' initial appearance in the Northern District of Iowa and his first unresisted motion for a continuance were the only non-excludable days for purposes of the Speedy Trial Act, well below the 70-day period necessary for the statute to be violated. Doc. 45 at 5–7. Based on my de novo review of the record, I agree with Judge Roberts' calculations.

With trial currently scheduled for October 19, 2026, one year and seven months will have passed between Watkins' indictment and the commencement of his trial. That length of time suffices to make the delay presumptively prejudicial and trigger a speedy trial analysis. *See United States v. Brown*, 325 F.3d 1032, 1034 (8th Cir. 2003) (delay is generally presumptively prejudicial when it is at least one year long); *United States v. Flores-Lagonas*, 993 F.3d 550, 563 (8th Cir. 2021) (collecting cases). The length of the delay is a factor that favors Watkins.

As for the reasons for the delay, the Government acted promptly to inform the Philippine authorities about Watkins' indictment. The nine months that Watkins spent detained in the Philippines is attributable to a separate sovereign's deportation process and cannot be imputed to the Government.[3] When Watkins arrived in San Francisco with his BI escorts, DEA agents were there to take him into immediate custody. That same day, he was provided an initial appearance and was ordered to be transferred to the Northern District of Iowa. While it took nearly three months for USMS to transport Watkins to this district, there is no evidence that this was the result of any intentional or deliberate delay. Thus, this transportation-related delay does not weigh strongly against the Government. *Barker*, 407 U.S. at 531 (neutral reasons for delay attributable to the Government are weighed against it, but less so than "deliberate attempt[s] to delay the trial"). In contrast, Watkins' unresisted motions for continuances will account for six months of delay before trial. While the basis for each continuance is justifiable, it still must be considered in apportioning blame for delays. *See, e.g.*, *Flores-Lagonas*, 993

[3] This is true despite the murkiness of what happened between Watkins' deportation order and his actual deportation, combined with the order requiring the United States to "provide and fund BI escorts" for his deportation. *See* Doc. 31-1. The United States had no role in the deportation process and is not expected "to pursue every option available to it to show it acted with reasonable diligence." *United States v. Chaudhry*, 162 F.4th 133, 148 (4th Cir. 2025); *accord United States v. Saunders*, 641 F.2d 659, 665 (9th Cir. 1980). A clearer picture of Watkins' deportation proceedings would be helpful, but the record contains no evidence putting the Government at fault for the length of Watkins' detention in the Philippines.

F.3d at 563 (attributing delays to defendant for continuances sought to "confer and prepare for trial"). On balance, the reasons for the delay weigh in favor of the Government.

The Government concedes that Watkins has asserted his right to a speedy trial. Doc. 31 at 10. However, this factor favors him only slightly, as he has filed two motions to continue trial since sending his pro se letter that demanded a speedy trial.

Finally, the prejudice factor favors the Government. Watkins claims he suffered prejudice in two ways on account of the delays: that he "was subjected to abhorrent conditions while incarcerated overseas" and that his lengthy overseas detention "allowed for the Government to secure a number of cooperating witnesses in this matter." Doc. 48 at 6. As noted above, however, Watkins' "suffering [in] those prison conditions cannot be attributed to the United States and was not caused by the delay." *Chaudhry*, 162 F.4th at 153. There is also no evidence that the Government intentionally delayed Watkins' deportation back to the United States to secure additional witnesses against Watkins. Thus, the record does not support a presumption of prejudice resulting from the delay. Conversely, the delays since Watkins' initial appearance in this district are all attributable to Watkins and were for his benefit.

Having weighed the four relevant factors, I find that there has been no Sixth Amendment violation requiring the dismissal of Watkins' case. Accordingly, Watkins' motion to dismiss must be denied.

## ***V. CONCLUSION***

For the reasons set forth herein:

1. Defendant Henry Watkins' objections (Doc. 48) are **overruled** and I hereby **accept** the Report and Recommendation (Doc. 45) without modification.

2. Watkins' motion (Doc. 27) to dismiss the indictment is **denied**.

**IT IS SO ORDERED** this 31st day of August, 2026.

Leonard T. Strand
United States District Judge